Case 2:11-cv-07305-JAK-PJW   Document 65-3   Filed 03/19/12   Page 1 of 19   Page ID #:552

# EXHIBIT A-2

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION


IN RE:

DOCKET NUMBER: 2306
SKINNYGIRL MARGARITA BEVERAGE MARKETING and SALES PRACTICES LITIGATION
THURSDAY, DECEMBER 1, 2011
TOMOCHICHI UNITED STATES COURTHOUSE
SAVANNAH, GEORGIA
_____

**PANEL MEMBERS**

**JOHN G. HEYBURN, II, Chairman**

| | |
|---|---|
| **KATHRYN H. VRATIL** | **W. ROYAL FURGESON, JR.** |
| **BARBARA S. JONES** | **PAUL J. BARBADORO** |
| **MARJORIE O. RENDELL** | **CHARLES R. BREYER** |

_____

**TRANSCRIPT OF HEARING**

<u>ATTORNEY APPEARANCES</u>:
    STUART A. DAVIDSON (For Regina Greene)
    Robbins Geller Rudman & Dowd
    Boca Raton, Florida

    DAVID B. WOLFE (For Maureen Stewart, et al)
    Skoloff & Wolfe, P.C.
    Livingston, New Jersey

    LARRY D. DRURY (For Amy Langendorf)
    Larry D. Drury, Ltd.
    Chicago, Illinois

    DONALD I. STRAUBER (For Beam Global Spirits & Wine, LLC)
    Chadbourne & Parke, LLP
    New York, New York

    JUSTIN J. PROCHNOW    (For Skinnygirl Cocktails, LLC and
    Greenberg Traurig, LLP SGC Global, LLC)
    Denver, Colorado

**(APPEARANCES CONTINUED IN SKINNYGIRL MARGARITA MATTER)**

REPORTED BY:
    C. Joan Mobley
    U.S. District Court Reporter, CCR-B1678, CVR
    P.O. Box 1316
    Brunswick, Georgia   31521
    (912) 280-1348

## INDEX

**Argument**

    1.  Stuart Davidson
    2.  David Wolfe
    3.  Larry Drury
    4.  Donald Strauber
    5.  Justin Prochnow

***P R O C E E D I N G S***

***(Call to Order at 2:39 p.m.)***

JUDGE HEYBURN:  2306, Skinnygirl Margarita Beverage Marketing and Sales Practices.

We are all glad to hear that the drinkers of margaritas are concerned about the natural qualities of the mix.

(EVERYONE LAUGHS)

MR. DAVIDSON:  We have had a lot of debate on whether the male lawyers here are drinkers of Skinnygirl and they say that they are not but I am not sure I --

JUDGE HEYBURN:  But that they are not concerned?

MR. DAVIDSON:  We will see.

Good afternoon, Your Honors, may it please the Court. My name is Stuart Davidson from the Robbins Geller law firm out of Boca Raton, Florida.  I represent the Plaintiff Regina Greene in the Southern District of Florida case.

JUDGE FURGESON:  Is this case a very complex case?  It sounds very straightforward and very simple, in fact.

MR. DAVIDSON:  It may be simple from a merit standpoint whether they labeled it or mislabeled it all natural but when you get nine separate cases in eight jurisdictions in six different states all seeking nationwide class-action status you make it a more complex situation, so I understand the Defendant's position that they would like to litigate in eight different courts in six different states and maybe file their

```
 1  motion for summary judgment here or their motion for a judgment
 2  on the pleading there but, Your Honor, with all due respect to
 3  the Defendants' position it seems to be somewhat absurd to have
 4  eight different courts deciding whether to certify a class
 5  action.  It seems to me absurd to have different courts decide
 6  whether the claims here - and this Your Honor is a complex issue
 7  - are preempted under the supremacy clause.  Beam has answered
 8  the complaints in each of the cases that I am aware of.  There
 9  are nine cases they have answered.  In their affirmative
10  defenses they assert the claim of preemption.  Preemption,
11  especially im this case is anything but simple.  It is a very
12  complex issue here.  We have researched it extensively.  I think
13  the judge who gets assigned these cases is going to have a
14  difficult job trying to weed through or wade through whether
15  these claims are preempted or not.  We believe that they are not
16  based upon our research but the absurdity of not consolidating
17  or centralizing these cases is should eight different district
18  judges decide that preemption issue, and they have raised
19  numerous affirmative defenses.  It seems to me, it seems to all
20  of us on the Plaintiff side who all are moving or speaking for
21  centralization that that should not happen so even though the
22  merits of the case may seem somewhat simple when you get down to
23  the nitty-gritty of it when you get down to to discovery, when
24  you get down to summary judgment, when you get down to class
25  certification never a simple issue, and when you get to the
```

1  issue of preemption it seems to me the only way to deal with
2  this is through centralization.
3          JUDGE RENDELL:  Maybe I am dense.
4          What is the preemption issue?
5          MR. DAVIDSON:  There is an alcohol at issue or an
6  alleged alcohol at issue and there are federal regulations that
7  address alcohol.  There is the Alcohol Tobacco and Firearms that
8  have authority over certain alcohol-related matters.  They have
9  raised the preemption issue.  Judge, I had the same opinion when
10 I read their answer that it doesn't seem like it should be
11 preempted.
12         JUDGE HEYBURN:  I do not think she was suggesting
13 exactly that.
14         MR. DAVIDSON:  Maybe not.
15 (EVERYONE LAUGHS)
16         JUDGE HEYBURN:  And I think Judge Rendell may have
17 also been asking what are all the factual issues.  This sounds
18 like purely a legal issue.  Not a lot of discovery involved.
19 Everybody knows what is involved and it is a legal issue.
20         MR. DAVIDSON:  I think a lot of it is a legal issue
21 but legal issues can be complex.
22         JUDGE HEYBURN:  Right.  On the ranking of things that
23 we typically consider, having multiple strictly legal issues is
24 not something that is necessarily disfavored in the law.  That
25 goes to the development of the law.  What we try to do is, if

Rough Draft                Rough Draft                Rough Draft

```
 1   possiblel, to centralize if there is a large bit of fact
 2   discovery that goes into the legal issue that is the kind of
 3   thing that we are concerned about.
 4           MR. DAVIDSON:  I understand, Judge Heyburn, but stare
 5   decisis means anything this panel consolidated -centralized the
 6   Wesson Oil cases against ConAgra which dealt with whether it was
 7   a false labeling claim involving all natural, and if the parties
 8   and if companies are able to have any understanding as to what
 9   may happen if they sued stare decisis has to something and I
10   think that in that case there were six cases, there weren't
11   nine, and so I would ask this Court to follow what I believe to
12   be its pattern of transferring and centralizing false labeling
13   cases against companies we cited at - not we but the Movant
14   cited at page 6 of the reply brief the numerous false labeling
15   cases that have come before the panel including Wesson Oil that
16   have been centralized.  I think that case stands on all fours
17   with the case that we are presented here.
18           JUDGE FURGESON:  This seems so straightforward. The
19   question is does the margarita contain sodium benzoate.
20           MR. DAVIDSON:  Right.
21           JUDGE FURGESON:  That's it.  It seems like somebody
22   send a chemist into a lab and says yes or no, and I may be
23   missing something here and if I am, please tell me.
24           MR. DAVIDSON:  I don't think that issue is necessarily
25   complex.  I agree with Your Honor that it is not that complex
```

Rough Draft                   Rough Draft                   Rough Draft

```
 1  but we are dealing with the question of whether they would be
 2  then liable under false labeling statutes or breach of
 3  warranties or unfair and deceptive trade practice claims.
 4  Whether they are liable becomes a question that should be
 5  resolved on summary judgment perhaps by one judge.  It seems,
 6  again, I use the word absurd, but it does if you have multiple
 7  judges deciding whether they are liable under certain statutes
 8  or they are not.
 9           JUDGE BREYER:  But that happens all the time in
10  interpreting statutes as an example.  Whatever the facts are
11  then one circuit may say a statute is one way and one circuit
12  may resolve it a different way and then there is a way to
13  resolve the conflicts and I am just trying to figure out if your
14  argument is basically an argument of law and and you are going
15  to make essentially the same argument in each court, you are
16  saying, look, we do not want ten courts to rule on it.  We want
17  one court.  And that is your argument.
18           MR. DAVIDSON:  Absolutely.  And I think it is a good
19  argument, Judge.
20           JUDGE BREYER:  But it is not that the discovery is
21  complicated.  Let's say it were a simple issue.  What difference
22  does it make whether it is complicated or simple.  Let's say it
23  is the simplest legal issue in the world but you have ten courts
24  ruling on it you would say we ought to consolidate it.
25           MR. DAVIDSON:  I absolutely would, Your Honor, and
```

```
 1  when you deal with class certification issues it seems to me
 2  that if one court says don't certify a class and another court
 3  says do, you create a conflict.  If one court says this is
 4  preempted and another one doesn't you create a conflict in my
 5  opinion.  I am just a lawyer practicing for 15 years.  I am not
 6  a frequent flyer in this court but I would think for convenience
 7  purposes and to prevent inconsistent rulings it seems to me that
 8  we take this simple case and we make it even simpler by letting
 9  one judge handle some of these relatively complex cases.
10            Your Honors, haven't let me discuss where these cases
11  should go if I could have 30 seconds to do so?
12            JUDGE HEYBURN:  First we have another question for
13  you.
14            JUDGE VRATIL:  As I understand it, each of these cases
15  is based on a state law of a different state.
16            MR. DAVIDSON:  As far as I have read these complaints,
17  I do not believe there is any federal law that has been asserted
18  in any of these cases.
19            JUDGE VRATIL:  So why is it important that there be
20  consistent rulings if it is all decided by state law, and why
21  wouldn't it make sense for the judges who are in those
22  respective jurisdictions to decide the cases under the law that
23  they are familiar with?
24            MR. DAVIDSON:  And I think maybe they will if they get
25  sent back under Lexicon but I think that we are seeking
```

1  nationwide class-action status in a lot of these cases and
2  whether that should actually occur in deciding that by multiple
3  different judges to me doesn't make any sense.  Whether they are
4  liable under those separate state statues will result in the
5  determination of what that state statute says and whether they
6  are liable or not but class certification issues will turn on
7  Rule 23 and whether a nationwide class should be or should not
8  be certified.  And there are federal issues.  I raise it again.
9  There are federal preemption issues that they have raised in
10 their answers.  And to have multiple courts address that doesn't
11 seem to me fair.
12           JUDGE HEYBURN:  Okay.
13           MR. DAVIDSON:  I would ask the Court to transfer these
14 cases to California.  California has more experience in false
15 labeling and false advertising cases.
16           JUDGE HEYBURN:  There is a lot of it going on out
17 there.  I agree with you.  Something ought to be done about it.
18           MR. DAVIDSON:  And I repeat.  I am not a frequent
19 flyer here.  I don't bring these cases every day.  I am not
20 before this panel all the time, but they have more experience
21 than any.  Their law clerks know the law and I think that Judge
22 Kronstadt is perfectly suited --
23           JUDGE HEYBURN:  I am sure they will advise the judges
24 accordingly.
25 (EVERYONE LAUGHS)

Rough Draft                Rough Draft                Rough Draft

```
 1              JUDGE FURGESON:  Judge Breyer ??
 2              MR. DAVIDSON:  Absolutely, Judge.
 3              JUDGE HEYBURN:  Thank you.  You have done a fine job.
 4   These are tough cases.  We have gone back and forth on these so
 5   we appreciate your argument.
 6              MR. DAVIDSON:  Thank you.  I appreciate it.
 7              JUDGE HEYBURN:  Mr. Wolfe.
 8         Are you still for centralization?
 9              MR. WOLFE:  I look forward to it.
10   (EVERYONE LAUGHS)
11         May it please the Court, I am David Wolfe from the
12   firm of Skoloff & Wolfe in the district of New Jersy and I was
13   thinking I would leave the issue of centralization to my
14   colleague Mr. Davidson.
15              JUDGE FURGESON:  He did a good job for you.
16              MR. WOLFE:  He did a great job.  But I would reiterate
17   the benefit of eliminating inconsistent pretrial rulings is
18   significant but if I can devote my allotted 2 minutes to
19   potentially the only issue that I see of great consensus here,
20   and that is venue, and that is venue and centralization in the
21   district of New Jersey.
22         Mr. Davidson and the Movants have identified both
23   California and New Jersey as being optimal places for these
24   matters to be centralized and more importantly and notably we
25   also have the Defendants who while contesting the
```

```
 1  appropriateness of centralization have indicated that if
 2  centralization is deemed warranted by this panel that they would
 3  prefer to have this centralized in the district of New Jersey.
 4  And I am sure the panel wonders why do both sides want to go to
 5  the great but often maligned state of New Jersey, and I would
 6  submit that it is Judge Hillman and it is for the convenience of
 7  the parties.  Judge Hillman is an outstanding jurist who
 8  effectively handled the pet foods litigation.  He does not
 9  currently have any MDL cases in front of him and in terms of the
10  convenience of the parties the district of New Jersey both sides
11  have identified it as a convenient location.  The panel need not
12  divine what is the most convenient of the districts where as
13  here you have both of the parties agreeing that New Jersey would
14  be an effective and convenient location for these matters to be
15  centralized.
16          So without any questions I think you for your time.
17          JUDGE HEYBURN:  Thank you very much.
18          Mr. Drury.
19          MR. DRURY:  May it please the Court.  Good afternoon.
20  Good to see you all.
21          My name is Larry Drury.  I represent the Plaintiff Amy
22  Langendorf in the also maligned state of Illinois.  I have heard
23  a lot of that this morning people not wanting to do there but I
24  want to go there.
25          Let me say that I do agree with my esteemed colleagues
```

```
 1  that this matter should be coordinated and get to the question
 2  of the proper venue to hear this case.  I am advocating the
 3  state of Illinois where the senior jurist, he has been a federal
 4  district court judge for many, many years, Judge Charles Norgle.
 5  He only has one MDL case, I believe, before him now.  That's the
 6  Ocwen case, O-c-w-e-n, number MDL 1460.  He is very well
 7  equipped to handle this type of education; an experienced
 8  jurist.  The jurist in two of the other forums, one being
 9  California and New York, Judge Kronstadt and Judge Oetken, they
10  are both new jurists.  They don't have the experience but I am
11  sure they are more than capable of hearing the matter.  But
12  again, Illinois is the place which we advocate.  The Defendant
13  Beam is in Illinois.  There is nobody in California; there is
14  nobody in New Jersey so that is a very substantial factor.  They
15  are advocating for states where none of the parties are at.
16          I also have asked as an alternative to the state of
17  Illinois the state of New York.  Skinnygirl is there, Fankel is
18  there, and Global is also located there; a convenience to
19  witnesses and parties.
20          And one more matter, Your Honor.  There is an issue.
21  The New York case and the Illinois case, particularly the
22  Illinois case, raises another issue as to the blue agave 100%
23  tequila which is not in any of the other cases and that is
24  whether or not the product is in fact a legitimate tequila
25  product.
```

```
 1              For all of these reasons and the reasons set forth in
 2    the moving papers, I respectfully request that the case be
 3    transferred to the state of Illinois or alternatively to the
 4    state of New York.  Thank you.
 5              JUDGE HEYBURN:  Thank you very much.
 6              Mr. Strauber.
 7              MR. STRAUBER:  May it please the Court, my name is
 8    Donald Strauber.  I represent Jim Beam.
 9              Beam opposes the Plaintiffs' request for
10    centralization because the issues in this case are not
11    sufficiently complex or complicated to justify a 1407 transfer.
12    Coordination here would not lead to judicial efficiency.  In
13    fact, to the contrary.  What we would be faced with if these
14    cases were centralized undoubtedly is a series of copycat cases
15    which would jump in and the judge who would be responsible for
16    dealing with these centralized cases would have to then deal
17    with cases which turn almost entirely on state law issues that
18    are issues relating to facts affecting the particular Plaintiff.
19              JUDGE HEYBURN:  Let me see if I understand this.  As I
20    understand it, the preemption issue is a matter of a law;
21    presumably most of the facts would be stipulated and that issue
22    would be decided.
23              MR. STRAUBER:  That is correct.  Your Honor,
24    preemption is one of our 30 ferventive defenses.  We have not
25    made a motion on preemption.  I don't know whether we ever will.
```

```
 1  The facts are very simple.
 2               JUDGE HEYBURN:  Right, and I don't need to go into
 3  that.
 4               MR. STRAUBER:  In response to Judge Furgeson's earlier
 5  question, the product indeed contains sodium benzoate.  It
 6  contains it in an infinitesimally tiny amount but, yes, it is
 7  definitely in there.  We don't contest that.
 8               JUDGE HEYBURN:  So the question in each state law case
 9  is going to be whether the acknowledged amount of that
10  particular chemical amounts to a violation of whatever that
11  particular state statute says and to do that will be a matter of
12  evidence which may be agreed to but also interpreting the state
13  law how strictly or broadly a particular state interprets
14  whatever their statute says, is that it?
15               MR. STRAUBER:  That is entirely correct, Your Honor.
16  And in addition to that question which will be very important,
17  it will be the question about how each individual purchaser of a
18  bottle of the margarita, what that purchaser read, what that
19  purchaser knew, what that purchaser cared about, what that
20  purchaser paid for the product, because the price varies from
21  liquor store to liquor store.  There are totally individual
22  issues which depend on the mindset of the individual plaintiff
23  and the state in which the plaintiff lives and the state law.
24               JUDGE FURGESON:  By the way, one of the reasons that
25  we will often consider centralization is to expedite discovery,
```
Rough Draft                    Rough Draft                    Rough Draft

```
 1  to make discovery more convenient for all the parties but often
 2  the parties can cooperate in discovery.  I know these are new
 3  cases but is there any indication that there won't be
 4  cooperation on these issues?
 5              MR. STRAUBER:  Absolutely, Your Honor.  It is Beams
 6  plan to cooperate fully with the Plaintiffs on the discovery
 7  whether we are talking about documents or talking about the
 8  depositions of Beam people.  We would make that available on a
 9  convenient basis to all of the Plaintiffs.  It is in not only
10  their best interest; it is in our best interest to do that, and
11  we certainly would do that.  But a lot of the discovery, of
12  course, will be discovery of the Plaintiffs and that will be
13  individual discovery in each of the cases.
14              JUDGE HEYBURN:  Perhaps this shows a defect in my
15  character but this particular product, is the alcohol included
16  in the product?
17              MR. STRAUBER:  Yes, it is.  The product is 25 proof or
18  27 proof.  The alcohol is already included.  I have not tasted
19  it.  I am told it's a wonderful drink and it has indeed been
20  proven to be very popular.
21              JUDGE HEYBURN:  Yes.  Among mostly people younger than
22  myself and myself.
23              MR. STRAUBER:  Well almost everybody is younger than
24  myself.
25  (EVERYONE LAUGHS)
```

Rough Draft                 Rough Draft                 Rough Draft

```
 1                JUDGE HEYBURN:  Any other questions?
 2                Okay.  Thank you very much.
 3                And I won't try to pronounce your name.  I have missed
 4   even the easiest ones so far.
 5                MR. PROCHNOW:  Good afternoon.  I am Justin Prochnow
 6   here with Greenbery Trauring on behalf of - I will say - the
 7   Skinnygirl Defendants.
 8                The people working at my office, all of the female
 9   attorneys, have said they would agree to work on the case if I
10   refer to them as my Skinnygirl team, including several that have
11   just had a baby so they have been clamoring to get on the team.
12                I am not going to belabor too many points.  I think
13   Mr. Strauber did a fine job.  We agree with the position that
14   this is - and in fact, even in the filings from the Plaintiffs
15   they have said this is a fairly simple case.  They are not
16   complex issues.  We do not think it is a matter that needs to be
17   transferred to the MDL.  We can deal with it appropriately in
18   each case.  And again, we agree that if in fact the panel does
19   agree that it is appropriate for MDL that New Jersey would be
20   the best location.  And while there are none of the Skinnygirl
21   Defendants that live in New Jersey, they live in New York, so it
22   is obviously in close proximity.
23                JUDGE HEYBURN:  Thank you very much.  We will take it
24   under submission.
25
```

Rough Draft                    Rough Draft                    Rough Draft

```
1        (PROCEEDINGS CONCLUDED)

2

3                      CERTIFICATION

4        I certify that the foregoing is a true and correct

5   transcript of the verbatim record of the proceedings in the

6   above-entitled matter.

7        This the 9th day of December, 2011.

8

9

10

11  /s/ C. Joan Mobley

12  U.S. District Court Reporter

13  Southern District of Georgia

14

15

16

17

18

19

20

21

22

23

24

         Rough Draft              Rough Draft              Rough Draft
```

1

Rough Draft   Rough Draft   Rough Draft