1   RICK L. SHACKELFORD (SBN 151262)
    *shackelfordr@gtlaw.com*
2   ROBERT J. HERRINGTON (SBN 234417)
    *herringtonr@gtlaw.com*
3   MATTHEW R. GERSHMAN (SBN 253031)
    *gershmanm@gtlaw.com*
4   GREENBERG TRAURIG, LLP
    1840 Century Park East, Suite 1900
5   Los Angeles, California  90067
    Telephone: (310) 586-7700
6   Facsimile: (310) 586-7800

7

8   Attorneys for Defendants
    Skinny Girl Cocktails, L.L.C., SGC Global, L.L.C.

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13   COLETTE VON KAENEL,                    CASE NO. CV11-7305 JAK (PJNx)
     individually and on behalf of all
14   others similarly situated,

15               Plaintiff,                  **OPPOSITION OF DEFENDANT
                                            SKINNY GIRL COCKTAILS, L.L.C.
16                                          AND SGC GLOBAL, L.L.C. TO
     v.                                     MOTION FOR APPOINTMENT AS
17                                          INTERIM CLASS COUNSEL**
18   SKINNY GIRL COCKTAILS,
     L.L.C., SGC GLOBAL, L.L.C.,
19   BEAM GLOBAL SPIRITS & WINE,            Date:        May 21, 2012
     INC. and JIM BEAM BRANDS CO.,          Time:        8:30 A.M.
20                                          Courtroom: 740
               Defendants.
21

22

23                                          Judge:       Hon. John A. Kronstadt
                                            Action Filed:  September 6, 2011
24

25

26

27

28

     _____
          OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS
                            INTERIM CLASS COUNSEL

**INTRODUCTION**

It is hard to know just what to make of the instant motion.  Although nominally brought on behalf of the sole named plaintiff in this one case, the motion and supporting affidavits are little more than unblushing puff pieces for 2 out of the 4 law firms that are counsel of record for this single plaintiff.  Those two firms have nominated themselves to represent *all* of the consumers in *all* of the similar Skinny Girl margarita class actions filed around the country, even though they are the counsel of choice of only ***two such consumers***.  At some unstated level, the motion seems to be seeking a reduced-calorie version of an MDL proceeding, even though a formal MDL has already been rejected as inappropriate.  There is no explanation for why the motion is being filed.  There is no explanation for the timing of the motion.  The purported table of authorities is no help, either.  The cited cases provide no authority for the motion.  Rather, they are little more than citations that have been cut and pasted out of the firms' promotional materials.

One also cannot review the motion without developing a certain sense of carpet bagging, because the would-be interim lead to plaintiff's counsel are not California lawyers.  Specifically, the Fears/Nachawati firm has no presence in California at all.  Named partner Mr. Nachawati is admitted to practice in one state -- Texas.  He is admitted to practice pro hac vice for this case.  The firm's other named partner, Mr. Fears, is admitted in three states, but not California.  The firm's resume identifies four other lawyers as members of the firm, but does not say whether they are members of the California bar.  According to the State Bar's on-line member directory, they are not admitted to practice in California.  The only one with the same name as a member of the California bar is Ms. Perez, but, based upon her place of employment, it appears to be only a namesake.  [See, Shackelford Decl.; ¶ 2; Exh. 1 - 7].

Nevertheless, if the Fears/Nachawati firm's brochure is accurate and up to date, the firm is currently involved in at least four active class actions in California, two of which were filed in 2011, and two of which are pending in this district.  Indeed, that is a very

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS
INTERIM CLASS COUNSEL

active California practice for six lawyers who are not barred in California, even if there are no other such cases.  Notably, that tally does not even count this case.  Moreover, the Fears/Nachawati firm seeks to be appointed co-lead counsel in a total of 9 cases involving the Skinnygirl margarita product, *not one of which has been filed in the firm's home state of Texas*.  Being lead counsel, whether on an interim basis or otherwise, in class actions from New Jersey to California would create a significant work load for a six lawyer shop, just to become familiar with the various states' substantive law and local rules requirements.[1]

The application of the Robbins Geller firm is even stranger in some ways.  At least that firm has a California office, populated in part by members of the California bar. Ironically, none of those California attorneys apparently is even associated with the case. Instead, the representation is being led by three members of the Florida bar, who have been admitted <u>pro</u> <u>hac</u> <u>vice</u>.  [Shackelford Decl.; ¶ 3; Exh. 8 - 13].

Thus, the motion before the court seeks to confer interim lead counsel status upon a group of provisionally admitted attorneys who are admitted only in other jurisdictions, but never admitted in California, despite devoting significant practice here.  There are tens of millions of consumers in Texas and Florida (with unknown and unknowable numbers of Skinnygirl margarita purchasers), yet these attorneys have been engaged by a grand total of one consumer in their home states who is so upset by the allegations that she was willing to lend her name to one of their cases.  Nevertheless, they seek to have this court crown them as interim class counsel for a national class, and doubtless at some point they will urge this court to apply California law to that national class, even though they have never bothered to pass the California bar.

---

[1] Keeping up with this Court's local rules in just this one case has proven burdensome for plaintiffs' counsel.  The original version of the instant motion was ordered stricken for failure to comply with local rules, and both the original motion and the sequel were filed without meeting and conferring as required by Local Rule 7-3.

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL

The motion also invites this Court to create a very strange conundrum.  An order of a district court in California would purport to confer interim lead counsel status on lawyers with respect to a class action lawsuit pending, for example, in New Jersey. However, those lawyers so appointed: (i) are not admitted in New Jersey; (ii) do not represent any party to the action in New Jersey; and (iii) do not have local counsel in New Jersey (or at least not as identified from the face of the moving papers).  Perhaps it is simply assumed that existing New Jersey counsel will be willing to take a back seat and act as local counsel to whomever this Court might appoint as interim lead counsel. However, the motion offers nothing to suggest that the say so of this Court would be sufficient to require, or even permit, these proposed interim lead counsel to be admitted pro hac vice in New Jersey, which has its own rules and procedures that govern such admission by non-barred attorneys.  Of course, these same arguments apply in New York, Illinois, and all of the other states where similar lawsuits have been filed against the Skinny Girl margarita product.  Notably, on that point, there is no showing that the attorneys nominated as interim lead counsel are even eligible to be admitted provisionally in all or any of the other jurisdictions.

These issues raise real concerns.  At some point, the named plaintiff in each of the cases will be deposed.  Who represents that person, the lawyer he or she hired, or interim lead counsel created by an order of this Court?  Who may assert the attorney-client privilege on the witness's behalf?  Who must be consulted to clear deposition dates? And must we wait until proposed interim lead counsel can be admitted pro hac vice?  These cases are all moving quickly into discovery and class certification phases.  Any delay while these details get sorted out is prejudicial to defendants and would risk upsetting the scheduling orders already put in place by affected courts.  [Shackelford Decl.; ¶ 8; Exh. 16 - 17].  Most of the other cases have briefing schedules for class certification motions. For example, pursuant to the February 17, 2012 Civil Case Management Plan and Scheduling order entered in *Rapcinsky v. Skinnygirl Cocktails, L.L.C., et al.,* in the

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL

Southern District of New York, plaintiff's motion for class certification is due on May 1, 2012. [Shackelford Decl., Ex. 16.]  Similarly, pursuant to the March 8, 2012 Scheduling Order entered in *Stewart v. Beam Global Spirits, Inc.,* in the District of New Jersey, plaintiff's motion for class certification is due May 15, 2012.  [Shackelford Decl., Ex. 17.]  Those cases have been moving along just fine without anyone acting as interim lead counsel, much less two law firms that are not even in either of those cases.  Ordering new lawyers in at this point would create chaos, not order.  Which attorneys would be filing motions for class certification?  Would it be only interim lead counsel, or plaintiff's chosen counsel, or both?  Who gets to decide?  More to the point, what business would this Court have in attempting to decide any of these issues for purposes of other cases not before this Court, especially if that order purports to decide issues that should be presented to and decided by those other respective courts.

In short, the order these attorneys seek is worse than unnecessary.  If granted, it would create a cumbersome procedural mess, and lead inevitably to delay, and likely prejudice to defendants.  In contrast, an order would secure no benefit other than elevating these two law firms in some yet to be defined pecking order when and if it ever comes time to dole out attorneys' fees.  There is no discernable value added to anyone other than the two firms being proposed as interim lead counsel.

Oddly, the motion seeking to appoint interim lead counsel is electronically signed by a member of yet another law firm, R. Dean Gresham, of Payne Mitchell Law Group, purportedly on behalf of "plaintiff."  We are told nothing about Mr. Gresham, or his firm (also located in Texas), but according to the State Bar's online member directory, Mr. Gresham is not admitted to practice in California either.  [Shackelford Decl.; ¶ 5; Exh. 14 - 15].  Naturally, since the motion is silent regarding him, we have no idea whether Mr. Gresham or any of his Texas-based colleagues are admitted in any of the other states where the other cases are pending.  In any event, if the two firms put forward as interim lead counsel are as qualified as Mr. Gresham's papers represent, then it is hard to see

4

what, if any, value is added by virtue of Mr. Gresham or his firm being counsel of record in this case or any of the other cases. The SGC Defendants support the right of a client to be represented by counsel of her choice (even though, in view of Ms. Von Kaenel's silence on the issue, we have no idea who that actually is). However, if there is to be designation of anyone as lead counsel, then any continued need for still more out of state lawyers and law firms to remain involved (and someday potentially lining up to be paid) is hard to fathom. The need certainly is not explained by Mr. Gresham's papers.

The multitude of law firms brings us next to the Gnau & Tamez Law Group, LLP, and Mr. Tamez. He is the only lawyer identified within the large group of the plaintiff's lawyers who actually has a California bar number. But, again, the moving papers offer no explanation of his role, either to date or going forward. So far, it appears he has done nothing more substantive than to be designated as local counsel on pro hac vice applications. The papers offer no explanation for why the San Diego office of the Robbins Geller firm could not perform that role in this case just as efficiently, whether or not this motion is granted. After all, Mr. Tamez is in San Diego as well, so it is not as if he has any greater proximity to the Court. Moreover, there is something ironic about designated interim lead counsel needing local counsel in the very case in which they were appointed as lead counsel.

There are other oddities about this motion. As the papers made clear, the two firms put forward as proposed interim lead counsel are only involved in 2 out of the 9 pending cases. SGC Defendants are aware of nothing that would prevent a Court in any of the other 7 cases from designating some other group of lawyers as interim lead counsel. What happens then? Is it a race? More to the point, the plaintiff's attorneys' motion fails to identify any authority to support the notion that an order by this Court appointing lead counsel would have any effect beyond this case. Therefore, unless such an order is necessary to maintain order among the numerous lawyers and law firms *in this case*, it is hard to see any point to the motion or the order it seeks.

5

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL

The plaintiff's lawyers clearly recognize this as an issue. Indeed, they have "notified" the plaintiff lawyers in other cases of this motion, and they have "no objection" to those other lawyers weighing in on the subject. Lawyers in seven other cases, with seven other sets of <u>pro hac vice</u> applications, weighing in on a motion, *even though this Court's disposition of it has not been shown to be binding in any other case or on any other parties.* That does not sound like a recipe for smooth and efficient handling of this case. Nor does it make any sense that the named plaintiff in one of the other cases would have to opt out of her own lawsuit in order to continue to be represented by, and only by, the counsel of her choosing. This motion makes no sense and should be denied.

## ARGUMENT

### I. Rule 23(g)(3) Does Not Warrant Appointment of Interim Lead Counsel in the Circumstances Presented Here

The only justification for the order the plaintiff attorneys seek is found in Fed.R.Civ.P. Rule 23(g), and, more specifically, Rule 23(g)(3). However, the rule itself provides no guidance as to when such an appointment is appropriate or warranted. Thus, courts have routinely relied upon the Advisory Committee Notes in determining when and whether to appoint interim lead counsel. The Advisory Committee Notes make clear that such an order is ordinarily reserved for circumstances when there are multiple putative class actions pending *in the same district*. As the Advisory Committee Notes point out, specifying interim lead counsel in such circumstances makes sense, because "there may be rivalry or uncertainty that makes formal designation of interim lead counsel appropriate." Fed.R.Civ.P. 23(g), 2003 Advisory Committee Notes.

The other typical circumstance when interim lead counsel are appointed is in the multi-district litigation context in which numerous actions, with potentially inconsistent or overlapping class definitions, are transferred to one court for coordination and pre-trial

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL

proceedings.  *E.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

Obviously, when multiple cases are filed in, or transferred to, a single district, the problems identified above do not exist.  A court appointing interim lead counsel does not have to worry about whether courts in other jurisdictions will enforce and apply its order, because there are no other such courts.  For the same reason, there are no concerns that another court might appoint different interim lead counsel.  There are no concerns about coordinating depositions, briefing schedules, privilege assertions, pro hac vice applications, local counsel concerns, or any of the other problems, because, in circumstances where appointing interim lead counsel is appropriate, all such issues are under one roof.  Here, there is no "one roof."

It is little wonder, then, that the case law makes clear that appointment of interim lead counsel is not appropriate when there are not multiple actions pending before a single court.  In *Issuer Plaintiff Initial Public Offering Fee Antitrust Litig.,* 234 F.R.D. 67 (S.D.N.Y 2006), the Southern District of New York declined to appoint interim lead counsel in two class actions pending before it.  *In Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross & Blue Shield,* No. 08-6160, 2011 WL 5881924, at *7 (D.N.J. Sept. 16, 2011), the court denied a motion to appoint interim lead counsel because, among other things, it was unnecessary in order for existing plaintiffs' counsel to participate in discovery and do whatever else would be required to bring a motion for class certification.  And in *Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 WL 1308582 (S.D. Ill., May 10, 2006), the court noted that interim lead counsel is better reserved for situations in which multiple competing actions were filed in and/or transferred to a single district, and thus denied such appointment in a matter where only one putative class action was pending.

Finally, in *Burns v. Navistar, Inc.,* No. 10-CV-2295, 2011 U.S. Dist. Lexis 18147 (S.D. Cal. Feb. 24, 2011), the court denied a motion to appoint interim lead counsel in

7

1   similar circumstances, where one similar action was pending in another district.  As

2   noted by the *Burns* court, apart from the normal circumstances of multiple competing

3   actions in a single district, the only time interim lead counsel is appointed is by

4   stipulation of the parties.  *Id.* at 6-7.  In reviewing all of the reasons that support

5   appointing interim lead counsel when multiple cases have been consolidated before a

6   single court, the *Burns* court found that those same reasons support *denying* such a

7   motion when there are *not* multiple actions before a single court.  SGC Defendants have

8   found no case suggesting that this Court could make such a ruling and thereby bind other

9   trial courts in other districts on the subject of lead counsel, particularly where those

10  would-be lead counsel are not otherwise ever before those other courts.  Certainly the

11  plaintiffs' attorneys have cited no case to support such a result.

12      In short, the order plaintiffs' attorneys seek here is a solution in search of a

13  problem.  Worse yet, it would exacerbate, not solve, the complexities that actually do

14  exist by virtue of having multiple lawsuits around the country involving different

15  combinations of products, parties and time periods.  Had the efforts of these attorneys to

16  establish an MDL been successful, then at least the motion could have been presented in

17  an appropriate context.  Those arguments did not carry the day, and there simply is no

18  reason for this Court (or, for that matter, any other court) to enter an order that creates far

19  more problems than the non-existent one it was meant to solve.

20  **II.**   **Appointment of Interim Lead Counsel is not Necessary**

21         **to Protect Any Class.**

22      Conspicuously absent from the plaintiffs' attorneys' motion is any mention of how

23  their appointment is "necessary" to protect anyone's interest but their own.  That

24  shortcoming speaks volumes in its own right but it also demonstrates why the motion

25  should be summarily denied.  Courts have limited the appointment of interim class

26  counsel to cases in which it was necessary to do so in order to protect the interests of the

27

28

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS
INTERIM CLASS COUNSEL

putative class.  *E.g., Jenkins v. Hyundai Motor Fin. Co.,* No. C2-04-720 2008 WL 781862 (S.D. Ohio March 24, 2008).

As noted above, the attorneys put forward as interim lead counsel are solely self-nominated.  No plaintiff -- not even the one who lent her name to this case -- has spoken out in favor of the motion.  The named plaintiffs in the other actions apparently have not ever been consulted on the matter; there certainly is no evidence that any of them supports having this group of lawyers foisted upon them by fiat of a distant court, sitting in a forum that has no ties whatsoever to their claims.  This is different from a situation involving solely "absentee" class members.  These other named plaintiffs at least have lent their name and support to other actions.  Their choice of attorney should not be overridden so cavalierly without a strong showing of necessity.  SGC doubts any such necessity could be shown here.  But we know for certain that these attorneys have not even tried.

## CONCLUSION

Simply put, these same plaintiff firms sought to have a multi-district litigation matter opened.  That request was denied.  The motion cites no authority for establishing interim lead counsel in circumstances in which an MDL proceeding was rejected.  The motion identifies no precedent for creation of an "M.D.L. Light" that would have no purpose or practical effect other than to establish a non-binding pecking order among plaintiff firms.  There is certainly no need for the order requested at this point.  For now, this court has one case, with one plaintiff.  There are not even other California competitors urging for the role of lead counsel by virtue of filing other cases here.  At

//

///

///

///

///

9

this juncture, there is no need for this motion or the order it seeks.  It should therefore be denied.

DATED:  April 30, 2012                    GREENBERG TRAURIG, LLP


                                          By:  //s//:  Rick L. Shackelford
                                              Rick L. Shackelford
                                              Attorneys for Defendants,
                                              Skinny Girl Cocktails, L.L.C., SGC Global, L.L.C.

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL

# **Table of Contents**

Page

INTRODUCTION ................................................................. 1

ARGUMENT.................................................................. 6

    I.    Rule 23(g)(3) Does Not Warrant Appointment of Interim
        Lead Counsel in the Circumstances Presented Here ................... 6

    II.   Appointment of Interim Lead Counsel is not Necessary
        to Protect Any Class .................................................. 8

CONCLUSION ................................................................. 9

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS
INTERIM CLASS COUNSEL

## <u>Table of Authorities</u>

<u>Page</u>

**<u>Federal Cases</u>**

*Burns v. Navistar, Inc.,*
     No. 10-CV-2295, 2011 U.S. Dist. Lexis 18147
     (S.D. Cal. February 24, 2011) ................................................................ 8

*Donaldson v. Pharmacia Pension Plan,*
     No. 06-3-GPM, 2006 WL 1308582
     (S.D. Ill., May 10, 2006) ...................................................................... 7

*Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross & Blue Shield,*
     No. 08-6160, 2011 WL 5881924, at *7  (D.N.J. Sept. 16, 2011) .......... 7

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
     240 F.R.D. 56 (E.D.N.Y. 2006) ............................................................ 7

*Issuer Plaintiff Initial Public Offering Fee Antitrust Litig.,*
     234 F.R.D. 67 (S.D.N.Y 2006)............................................................. 7

*Jenkins v. Hyundai Motor Fin. Co., No.*, C
     2-04-720 2008 WL 781862 (S.D. Ohio March 24, 2008) ..................... 9

**<u>Federal Rules</u>**

Fed.R.Civ.P. Rule 23(g)........................................................................... 6

ii

OPPOSITION OF SGC DEFENDANTS TO MOTION FOR APPOINTMENT AS
INTERIM CLASS COUNSEL

DEN 97,783,535